# "EXHIBIT A"

IN THE CIRCUIT COURT OF TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

| | |
|---|---|
| CORNERSTONE SYSTEMS, INC., | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. CT-004884-09 |
| | ) Division I |
| CENTURY SURETY COMPANY, | ) |
| Defendant. | ) |

FILED
OCT 15 2009
CIRCUIT COURT CLERK
BY _____ D.C.

## COMPLAINT

Plaintiff Cornerstone Systems, Inc. ("Cornerstone" or "Plaintiff") submits the following

Complaint against Defendant Century Surety Company ("Century" or "Defendant") and states as

follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Cornerstone is a Tennessee corporation conducting business primarily as a

property freight broker under authority of the Federal Motor Carrier Safety Administration, MC

#321007.

2.      Century, on information and belief, is an Ohio corporation conducting business in

Tennessee.

3.      Jurisdiction and venue in this Court are proper pursuant to Tenn. Code Ann. §§

16-10-101 and 20-2-201, et seq. Further, Plaintiffs aver that this cause of action was filed within

one year of the acts of violation of the Tennessee Consumer Protection Act and, therefore,

jurisdiction and venue in this Court are proper pursuant to Tenn. Code Ann. § 47-18-109(a).

## FACTUAL BACKGROUND

4.      As part of its business operations, Plaintiff desired to purchase contingent cargo liability insurance to cover the risk of loss to its shipper customers in the event the motor carrier insurance of the delivering carrier did not cover the loss for any reason.

5.      Plaintiff contacted USI of Tennessee, Inc. ("USI") and George M. Moreland, III ("Moreland"), Defendant Century's insurance agents, to inquire and obtain contingent cargo liability insurance.

6.      On or about July 1, 2007, Plaintiff purchased contingent cargo insurance from Defendant Century, policy CCP469452 ("Policy"), which includes a Domestic Intermediary Contingent Liability Endorsement ("Endorsement").

7.      Republic National Distribution Company ("RNDC") contacted Plaintiff to arrange for transportation of a large shipment of wine from California to RNDC's facility in Virginia.

8.      Union Pacific Railroad ("UP") handled the shipment of the wine, which filled or partially filled two railroad cars identified as railcars SP 391938 and SSW 28813.  The wine shipment was valued at Four Hundred Eighty-Five Thousand Nine Hundred Forty-Five and 75/100 Dollars ($485,945.75).

9.      On or about July 3, 2007, the UP railroad cars carrying RNDC's wine derailed in Sugar Creek, MO, causing extensive damage to the wine ("Loss").

10.      On or about July 5, 2007, two days following the train derailment causing the Loss, Cornerstone submitted its Property Loss Notice to Defendant in accordance with the Policy's requirements.

11.      At the time of the Loss, RNDC was insured by Travelers Property Casualty Company of America ("Travelers").

12.     Upon information and belief, Century hired W.K. Webster Overseas Limited ("W.K. Webster") to handle settlement negotiations of the Loss between the wineries, RNDC (through its insurer Travelers), UP and Cornerstone.

13.     Upon information and belief, Travelers paid RNDC Four Hundred Seventeen Thousand Six Hundred Thirty-Seven and 53/100 Dollars ($417,637.53) to reimburse it for its loss. Following this payment, Travelers submitted a claim to UP and Cornerstone, demanding that it be reimbursed for its payment to RNDC.

14.     On or about March 16, 2009, following nearly two years of extensive negotiations between Defendant and its agent W.K. Webster, Cornerstone, UP and Travelers, a Mutual Release and Indemnification Agreement was executed wherein Cornerstone and UP were released from further liability to Travelers in consideration of payment of Three Hundred Seventy-Five Thousand and no/100 Dollars ($375,000.00) ("Settlement"). UP contributed Two Hundred Seventy-Five Thousand and no/100 Dollars to the Settlement and Cornerstone contributed One Hundred Thousand and no/100 Dollars ($100,000.00) to the Settlement.

15.     Defendant and its agent W.K. Webster were intimately involved in the negotiations leading up to the Settlement and made numerous representations that a joint settlement between UP and Cornerstone should be pursued to settle the Loss with Travelers and avoid litigation. At one point, Defendant (through its agent) suggested that Cornerstone/Century contribute $108,666.76 to a joint settlement to settle the Loss with Travelers.

16.     At the height of the settlement negotiations, with Defendant fully aware of the imminent settlement agreement between Cornerstone and UP, Defendant (through its agent W. K. Webster) informed Cornerstone that it was advising Traveler's attorney to "communicate/negotiate directly with UP/Cornerstone", and Cornerstone was to simply keep Century "in the loop" in the event Cornerstone is sued.

17.     On or about March 30, 2009, Cornerstone sent a letter to Century demanding reimbursement of its contribution to the Settlement.  This letter specifically requests settlement in the amount of $100,000:00 against Cornerstone's Cargo Policy.

18.     On or about April 10, 2009, Defendant Century denied Plaintiff's claim, asserting, *inter alia,* that the "policy is not written to pay gratuitous claims intended to preserve the business relationship between our insureds and their customers," and that Cornerstone settled the Loss without prior written notice to and consent from Century.

19.     On May 15, 2009, Plaintiff's attorney sent a demand letter to Century, which provided Century with a Final Demand to Pay Claim and put Century on notice that it expected reimbursement for its contribution to the Settlement within sixty (60) days of the date of the letter; otherwise, it would pursue its claim in Court.  This letter also put Century on notice that Cornerstone would pursue a bad faith failure to pay penalty pursuant to Tenn. Code Ann. § 56-7-105 if Century refused to honor Cornerstone's claim under the Policy.

20.     On or about July 24, 2009, Defendant's attorney notified Plaintiff's counsel that Century was in need of additional information and "[p]ending Century's receipt and evaluation of this information, Century is not in a position to either accept or reject your Final Demand to Pay Claim."

21.     To date, Century has not reimbursed Cornerstone for its contribution to the Settlement.

## COUNT ONE

## BREACH OF CONTRACT

22.     Cornerstone adopts and incorporates by reference the allegations set forth in paragraphs 1–21.

23.    Plaintiff entered into a contractual agreement with Defendant Century, the Policy, and the Policy specifically covers the contingent liability interest of the Insured for losses sustained by the Insured when a carrier does not provide settlement for a loss within a reasonable time after presentation of full proof of loss.

24.    UP, the carrier who had custody of the wine at the time of the Loss, did not provide settlement of the Loss to Travelers within a reasonable time after presentation of the Loss.

25.    Notwithstanding filing a claim for its contribution to the Settlement in accordance with the Policy's requirements and making numerous demands for payment, Defendant Century has denied coverage/payment to reimburse Cornerstone for its contribution to the Settlement.

26.    As a direct and proximate result of Defendant Century's breach of contract, Plaintiff has sustained damages of One Hundred Thousand and 00/100 Dollars ($100,000.00), plus interest and attorneys' fees.

## COUNT TWO

## VIOLATION OF TENNESSEE'S CONSUMER PROTECTION ACT

27.    Cornerstone adopts and incorporates by reference the allegations set forth in paragraphs 1–26.

28.    This claim is for violation of the Tennessee Consumer Protection Act of 1977 as stated in Tennessee Code Annotated §§ 47-18-101, et seq. (hereinafter referred to as the "Act") by Defendant.

29.    As a result of the above, *inter alia*, the Defendant committed one or more unfair or deceptive acts/practices in violation of the Act, including, but not limited to:

A.    Creating the false impression that in purchasing the Policy, which included the Endorsement, Plaintiff would have the confidence knowing that its shipments were

fully covered in the event of a loss sustained as a result of a carrier in whose custody and/or under whose responsibility the goods were at the time of loss failing to provide settlement within a reasonable time after presentation of such a loss;

B.      Affirmatively representing to Plaintiff that certain exclusions to the Policy warranted denial of Plaintiff's claim, knowing that such exclusions are inapplicable to the Loss at issue in this case; and

C.      Unfairly refusing to pay Plaintiff's claim under the Policy even though Plaintiff filed a claim for the Loss in accordance with the Policy's requirements.

30.      Defendant's refusal to pay Plaintiff's claim constitutes an "unfair or deceptive act or practice" under the Act.

31.      As a direct and proximate result of Defendant's unfair refusal to pay Plaintiff's claim, Defendant has violated the Act, and Plaintiff has sustained damages of One Hundred Thousand and 00/100 Dollars ($100,000.00), plus interest and attorneys' fees.   Plaintiff is entitled to recover these damages as well as its reasonable attorney fees and treble damages.

## COUNT III

### BAD FAITH FAILURE TO PAY AN INSURANCE CLAIM

32.      Cornerstone adopts and incorporates by reference the allegations set forth in paragraphs 1–31.

33.      This claim is for Defendant's violation of the Tennessee Bad Faith Failure to Pay Statute, codified at Tennessee Code Annotated § 56-7-105.

34.      In accordance with the requirements set forth in Tenn. Code Ann. § 56-7-105, Plaintiff's attorney sent a demand letter to Century, which provided Century with a Final Demand to Pay Claim and put Century on notice that it expected reimbursement for the Loss

within sixty (60) days of the date of the letter, May 15, 2009, or Cornerstone would pursue a Bad Faith Failure to Pay Claim against Century.

35.     As of the filing of this Complaint, Defendant has wrongfully and in bad faith refused to pay Cornerstone's claim for the Loss.  Evidence of Defendant's bad faith includes, but is not limited to:

A.     Century, through its agent, affirmatively and repeatedly representing to Cornerstone that it should contribute to a joint settlement with UP to reimburse Travelers for the Loss, even suggesting at one point to contribute $108,666.76, then subsequently refusing to reimburse Cornerstone for its contribution to the Settlement; and

B.     Denying Cornerstone's Claim, asserting that Cornerstone settled the matter without prior written notice to and consent from Century, despite the fact that Cornerstone notified Century of the Loss in accordance with the Policy's requirements and despite the fact that Century actually notified Cornerstone that it was directing Travelers to "communicate/negotiate directly with UP/Cornerstone."

36.     As a direct and proximate result of Defendant's actions from the time of the Loss until the filing of this Complaint, Defendant's failure to pay Plaintiff's claim is in clear violation of the Bad Faith Failure to Pay statute, Tenn. Code Ann. § 56-7-105.  Consequently, Plaintiff has sustained damages of One Hundred Thousand and 00/100 Dollars ($100,000.00), plus additional expenses, losses and injury, including attorney fees.

## COUNT IV

## PROMISSORY ESTOPPEL

37.     Cornerstone adopts and incorporates by reference the allegations set forth in paragraphs 1–36.

38.     Defendant clearly and unambiguously represented to Plaintiff that the Policy

would cover Cornerstone for losses sustained such as the type of loss at issue in this matter. Additionally, Defendant made clear and unambiguous representations that Cornerstone would be reimbursed if it made a contribution to a joint settlement with UP to resolve Traveler's claim for the Loss.

39.     Throughout the course of the Parties' dealings, and through the conduct and verbal statements of its agents having actual and/or apparent authority to bind Defendant, Defendant led Plaintiff to reasonably believe that the Policy would cover Cornerstone for the type of loss at issue in this matter.  Additionally, throughout the course of the Parties' dealings, and through the conduct and verbal statements of its authorized agents, Defendant led Plaintiff to reasonably believe that Cornerstone would be reimbursed if it made a contribution to a joint settlement with UP to resolve Traveler's claim for the Loss.

40.     Relying to its detriment on Defendant's clear and unambiguous promise to cover losses of the type at issue in this matter and the subject Loss, Defendant induced, through its course of dealings with the Plaintiff and through the conduct and verbal statements of its authorized agents, Plaintiff to purchase the Policy for coverage of losses of the type at issue in this matter and to enter into a joint settlement with UP to reimburse Traveler's for the Loss.

41.     That Plaintiff would purchase the Policy and to enter into a joint settlement with UP was reasonably foreseeable to the Parties because Defendant was intimately involved in sale of the Policy to Cornerstone and the settlement negotiations between Defendant and its agent W.K. Webster, Cornerstone, UP and Travelers.

42.     Thus, when Plaintiff purchased the Policy for coverage of losses of the type involved in this matter and subsequently contributed to the Settlement, Plaintiff acted reasonably and justifiably relied on Defendant's clear and unambiguous promise of coverage and reimbursement for such contribution to the Settlement.

43.     As a direct and proximate result of Defendant's actions in reneging its clear and unambiguous promise and representations to cover losses of the type at issue and the subject Loss, Plaintiff suffered damages and injustice can only be avoided by this Court's enforcement of Defendant's promise through an order that Defendant remunerate Plaintiff for its contribution to the Settlement.

## COUNT V

## FRAUD IN THE INDUCEMENT

44.     Cornerstone adopts and incorporates by reference the allegations set forth in paragraphs 1–43.

45.     Prior to Cornerstone's purchase of the Policy, Century's agents made statements and representations to Cornerstone that the Endorsement to the Policy extended Cornerstone's coverage and would protect Cornerstone's contingent liability interest for losses sustained by Cornerstone when a carrier does not provide settlement of a loss within a reasonable time after presentation of full proof of loss.

46.     Century's statements and representations, as referenced in Paragraph 45 above regarding the Endorsement's scope of coverage, were material to the transaction because Cornerstone would not have otherwise purchased the Policy had it known that coverage of losses of the type at issue in this matter did not exist under the Policy.

47.     Century's statements and representations regarding the Endorsement's scope of coverage were false because Century never intended to cover losses sustained by Cornerstone when a carrier does not provide settlement of a loss within a reasonable time after presentation of full proof of loss.  The falsity of its statements and representations is evidenced by Century's failure to reimburse Cornerstone for its contribution to the Settlement of the subject Loss over two years after the Loss was sustained.

600561-1                                              9

48.     Century knew that its statements and representations regarding the Endorsement's scope of coverage were false at the time they were made and Century made such statements and representations without any intention of performing and/or with utter disregard for their truth.

49.     Century intended to induce Cornerstone's reliance on its statements and representations regarding the Endorsement's scope of coverage so that Cornerstone would purchase the Policy.

50.     Cornerstone reasonably relied on Century's statements and representations regarding the Endorsement's scope of coverage when it purchased the Policy.

51.     As a direct and proximate result of Defendant's representations, Cornerstone purchased the Policy, which did not provide the contingent liability protection as conveyed by Century and, as a result, Cornerstone was damaged.

## COUNT VI

## NEGLIGENT MISREPRESENTATION

52.     Cornerstone adopts and incorporates by reference the allegations set forth in paragraphs 1–51.

53.     Prior to Cornerstone's purchase of the Policy, it was informed by Century's agents that the Endorsement to the Policy extended Cornerstone's coverage and would protect Cornerstone's contingent liability interest for losses sustained by Cornerstone when a carrier does not provide settlement of a loss within a reasonable time after presentation of full proof of loss.

54.     This information regarding the Endorsement's scope of coverage was faulty because, contrary to its representations, Century never intended to cover losses sustained by Cornerstone when a carrier does not provide settlement of a loss within a reasonable time after

presentation of full proof of loss, which is evidenced by Century's failure to reimburse Cornerstone for its contribution to the Settlement of the subject Loss nearly two years after the Loss was sustained.

55.     Century provided this faulty information to Cornerstone regarding the Endorsement's scope of coverage in the course of Century's business and during a transaction in which Century had a pecuniary interest.

56.     Century provided this faulty information regarding the Endorsement's scope of coverage as guidance to Cornerstone so that Cornerstone would purchase the Policy.

57.     Century, as the insurer issuing the Policy and Endorsement, had an affirmative duty to inform Cornerstone regarding the facts and circumstances that would impact coverage under the Policy.

58.     Century's representations that the Endorsement to the Policy would extend Cornerstone's coverage and protect its contingent liability interest for losses sustained by Cornerstone when a carrier does not provide settlement of a loss within a reasonable time after presentation of full proof of loss was material to Cornerstone's purchase of the Policy and Endorsement.

59.     Century failed to exercise reasonable care in communicating the Endorsement's scope of coverage to Cornerstone when Century failed to disclose circumstances that would preclude coverage under the Endorsement.  Such failure to exercise reasonable care constitutes Century's breach of its affirmative duty to Cornerstone.

60.     At the time that Century provided Cornerstone with assurances that the Policy and Endorsement would protect Cornerstone's contingent liability interest for losses sustained by Cornerstone when a carrier does not provide settlement of a loss within a reasonable time

after presentation of full proof of loss, Century knew that Cornerstone would rely upon its representations.

61.     Cornerstone did, in fact, justifiably rely upon Century's representations and as a direct and proximate result of Defendant's representations, Cornerstone purchased the Policy, which did not provide the contingent liability protection as conveyed by Century and, as a result, Cornerstone was damaged.

### PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Cornerstone requests the following relief:

1.     That process be issued and that Defendant be made to appear and answer;

2.     That the Court award Plaintiff compensatory damages in the amount of at least $100,000.00, plus interest, for damages incurred through the filing of this Complaint;

3.     That the Court award Plaintiff treble damages pursuant to Tenn. Code Ann. § 47-18-101, et seq.;

4.     That the Court award Plaintiff its reasonable expenses, including attorneys' fees and court costs, in bringing this action; and

5.     That the Court provide such other, further, and additional relief as the Court may deem just.

Respectfully submitted,

ADAMS AND REESE LLP

By: *Tricia T. Olson*

MARK S. NORRIS          (7354)
TRICIA T. OLSON          (24643)
Brinkley Plaza
80 Monroe Avenue, Suite 700
Memphis, Tennessee 38103-2467
Tel: (901) 525-3234
Fax: (901) 524-5419

*Attorneys for Plaintiff*



## State of Tennessee
## Department of State
Division of Business Services
312 Rosa L Parks Ave
6th Floor Wm. R. Snodgrass Tower
Nashville, Tennessee 37243

Case Number:  CT-004884-09

10/28/2009
Date

70090080000099436694
Certifed Number

HON. JIMMY MOORE
SHELBY COUNTY-CIRCUIT COURT
140 ADAMS ST. ROOM 324
MEMPHIS, TN 38103

RE:  CORNERSTONE SYSTEMS, INC

VS:  CENTURY SURETY COMPANY

Dear Clerk:

Enclosed are the following papers in the above styled case:

☑  Original Summons

☑  Affidavit and Endorsement

☑  Registered or Certified Return Receipt signed by:

SEE CARD

☐  Registered or Certified letter returned undelivered with notation:

Sincerely:

*Tre Hargett*

Tre Hargett

enclosures

Initials:  MMH
CC:

SS-4210 (Rev. 12/96)

RDA No. 1003

AFFIDAVIT
and
ENDORSEMENT

10/28/2009
Date

Case Number:   CT-004884-09

70090080000099436694
Certified Number

RE:   CORNERSTONE SYSTEMS, INC

VS:   CENTURY SURETY COMPANY

I   **DARLENE LAWRENCE**   , having been duly authorized by Tre Hargett, Secretary of State of Tennessee, do hereby make oath on his behalf and under authorization as follows : That on   Tuesday, October 20, 2009   , I received from the plaintiff the original and certified copies of the Summons and Complaints issued against the defendant :   **R/A NICHOLAS Z ALEXANDER CENTURY SURETY COMPANY**

whose address is:
465 CLEVELAND AVENUE, WESTERVILLE, OH 43082
and that on   Wednesday, October 21, 2009   , I mailed by registered or certified return-receipt mail the certified copies of the Summons and Complaint to the defendant at the above address together with written notice that service was so made. I further make oath that the return receipt for the registered or certified letter was received at my office in Nashville, Tennessee, on **Wednesday, October 28, 2009**   , and returned to   SHELBY COUNTY-CIRCUIT COURT of   MEMPHIS   , Tennessee on   **Wednesday, October 28, 2009**   .

Tre Hargett
Secretary of State

by

Subscribed and sworn to before me,
this 28TH   day of   OCTOBER   , 2009

NOTARY PUBLIC

My commission expireS   9-8-2013

ANNE HACKNEY
STATE
OF
TENNESSEE
NOTARY
PUBLIC
DAVIDSON COUNTY, TN



SS-4201 (Rev. 2/90)